IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| MARIE ROMANIAK, | CASE NO. 1:20-cv-02773 |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| ESURANCE PROPERTY AND CASUALTY INSURANCE COMPANY, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Currently pending is Defendant Esurance Property & Casualty Insurance Company's ("Esurance") Motion to Dismiss Plaintiff's Amended Complaint. (Doc. No. 10.) Plaintiff Marie Romaniak ("Romaniak") filed a Memorandum in Opposition on May 12, 2021, to which Esurance replied on May 26, 2021. (Doc. Nos. 12, 14.) Romaniak also filed three notices of supplemental authority. (Doc. Nos. 13, 17, 19.) Esurance responded to Romaniak's latter two notices. (Doc. Nos. 18, 20.) For the following reasons, Esurance's Motion to Dismiss is DENIED.

I.  **Background**

A.  **Policy PAOH-005272058 Provisions**

Romaniak purchased a car insurance policy numbered PAOH-005272058 ("the Policy") for her vehicle, a 2007 Pontiac G6 GT, issued by Esurance. (Doc. No. 7, ¶¶ 9, 16.) Part IV of the Policy, "Coverage for Physical Damage to an Auto," contains several provisions that are relevant to the instant matter, including the "Insuring Agreement: Collision Coverage," "Limit of Liability," and "Payment of Loss" provisions. (Doc. No. 7-1, PageID# 199, 206-07.)

The "Insuring Agreement: Collision Coverage" provision reads in relevant part as follows:

> **1.** Subject to the limits of liability, if "you" pay the premium for Collision Coverage, "we" will pay for a sudden, direct, and accidental "loss" to:
>
>> **A.** "Your" "covered auto" for which Collision Coverage has been purchased, as stated in "your" Declarations page;
>>
>> **B.** A "non-owned auto"; or
>>
>> **C.** A "trailer" titled to "you";
>> if it overturns or is in a "collision" with another object.

(*Id.* at PageID# 199.) The Policy defines "loss" to mean "**A.** Sudden, direct, and unintended physical damage; or **B.** Theft." (*Id.* at PageID# 182.)

The "Limit of Liability" provision reads in relevant part as follows:

> **1.** "Our" limit of liability for "loss" **will be the lesser of the**:
>
>> **A. Actual cash value** of the stolen or damaged property;
>>
>> **B.** Amount necessary to repair the property to its pre-loss physical condition; or
>>
>> **C.** Amount necessary to replace the property with other property of like kind and quality.

(*Id.* at PageID# 205-06, emphasis added.) The term "actual cash value" is not defined in the Policy.

Finally, the "Payment of Loss" provision reads in relevant part as follows:

> "We" may, at "our" expense, return any stolen property to:
>
> **1.** "You"; or
>
> **2.** The address shown on the Declarations page.
>
> If "we" return stolen property, "we" will pay for any damage resulting from the theft. "We" may keep all or part of the property at an agreed or appraised value. "We" may pay for a "loss" in money or repair or replace the damaged or stolen property. **If "we" pay for "loss" in money, "our" payment will include the applicable sales tax for the damaged or stolen property.**

(*Id.* at PageID# 206, emphasis added.)

2

### B. Romaniak's Car Accident

On November 7, 2017, Romaniak's insured vehicle was involved in a collision. (Doc. No. 7, ¶ 17.) Romaniak filed a claim for property damage with Esurance. (*Id.*) Esurance, through a third-party vendor, determined that Romaniak's vehicle "was a total loss . . . ." (*Id.* at ¶ 18.) The third-party vendor calculated the base value of Romaniak's vehicle to be $5,750.00 and the adjusted vehicle value to be $5,835.00. (*Id.*) The vendor also calculated the sales tax on the adjusted vehicle value to be $466.80. (*Id.* at ¶ 20.) Romaniak alleges that Esurance paid for her loss "in money," but only paid her $5,835.00 minus her deductible of $500.00, or $5,335.00 in total, for her loss. (*Id.* at ¶ 21.) Romaniak alleges that Esurance failed to pay her any sales tax for her totaled vehicle, "despite paying for the loss 'in money' . . . ." (*Id.*)

Romaniak filed her Amended Complaint on March 13, 2021. (Doc. No. 7.) Romaniak, on behalf of herself and others similarly situated, alleges a single breach of contract claim against Esurance. (*Id.* at ¶¶ 35-41.) Romaniak alleges that Esurance breached its contract with her and other putative class members by failing to include sales tax in its loss claim payments. (Doc. No. 7.) Esurance filed a Motion to Dismiss on April 12, 2021. (Doc. No. 10.) On May 12, 2021, Romaniak filed her Opposition to Esurance's Motion, to which Esurance replied on May 26, 2021. (Doc. Nos. 12, 14.) Romaniak also filed several notices of supplemental authority. (Doc. Nos. 13, 17, 19.) Esurance replied to Romaniak's latter two notices. (Doc. Nos. 18, 20.)

## II. Standard of Review

### A. Fed. R. Civ. P. 12(b)(6)

Esurance moves to dismiss Romaniak's Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Under Fed. R. Civ. P. 12(b)(6), the Court accepts the plaintiff's factual allegations

as true and construes the Complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly*, 550 U.S. at 555-56, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)) (quoting *Twombly,* 127 S.Ct.

at 1964). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

  **B.**  **Fed. R. Civ. P. 12(b)(1)**

  Esurance also moves to dismiss Romaniak's Complaint pursuant to Fed. R. Civ. P. 12(b)(1). The standard of review of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction. *Wayside Church v. Van Buren County,* 847 F.3d 812, 816–17 (6th Cir. 2017). A facial attack "questions merely the sufficiency of the pleading" and requires the district court to "take[] the allegations in the complaint as true." *Gentek Bldg Prods., Inc. v. Sherwin-Williams Co.,* 491 F.3d 320, 330 (6th Cir. 2007). To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction. *See Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016); *Ogle v. Ohio Civil Service Employees Ass'n, AFSCME*, Local 11, 397 F.Supp.3d 1076, 1081-1082 (S.D. Ohio 2019).

  A factual attack, on the other hand, "raises a factual controversy requiring the district court 'to weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.'" *Wayside Church,* 847 F.3d at 817 (quoting *Gentek Bldg. Prods., Inc*., 491 F.3d at 330). The plaintiff has the burden of proving jurisdiction when subject matter jurisdiction is challenged. *Rogers v. Stratton Indus*., 798 F.2d 913, 915 (6th Cir. 1986). The court may allow "affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

**III.     Analysis**

In Ohio, "[t]he elements for a breach of contract claim are that a plaintiff must demonstrate by a preponderance of the evidence (1) that a contract existed, (2) that the plaintiff fulfilled his obligations, (3) that the defendant failed to fulfill his obligations, and (4) that damages resulted from this failure." *Williams v. Richland County Children Servs.*, 861 F. Supp. 2d 874, 885 (N.D. Ohio 2011) (*citing Telxon Corp. v. Smart Media of Delaware, Inc.*, Case Nos. 22098, 22099, 2005 WL 2292800, at *20 (Ohio App. 9th Dist. 2005)).

Under Ohio law, "[a]n insurance policy is a contract whose interpretation is a matter of law." *Sharonville v. Am. Employers Ins. Co.*, 846 N.E.2d 833, 836 (Ohio 2006) (*citing Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978)). A court "examine[s] the insurance contract as a whole and presume[s] that the intent of the parties is reflected in the language used in the policy." *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003).

"'If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined.'" *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio 1995) (quoting *Inland Refuse Transfer Co. v. Browning-Ferris Inds. of Ohio, Inc.* 474 N.E.2d 271, 272 (Ohio 1984)). Thus, a court must "look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy." *Westfield Ins. Co.*, 797 N.E.2d at 1261. "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. . . . As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Id.* Moreover, "a contract term is not ambiguous simply because parties disagree about its meaning." *Tattletale Portable Alarm*

*Sys., Inc. v. MAF Prods., Inc.*, No. 2:14-cv-00574, 2016 WL 5122545, at *6 (S.D. Ohio Sept. 21, 2016) (citing *Shifrin v. Forest City Enters.*, 597 N.E.2d 499, 501 (Ohio 1992)).

In the insurance context, "[i]f provisions are susceptible of more than one interpretation, they 'will be construed strictly against the insurer and liberally in favor of the insured.'" *Sharonville*, 846 N.E.2d at 836 (quoting *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, syllabus (Ohio 1988)). However, this rule has limitations. While an insurance policy that is "reasonably open to different interpretations will be construed most favorably for the insured, that rule will not be applied so as to provide an unreasonable interpretation of the words of the policy." *Westfield Ins. Co.*, 797 N.E.2d at 1261 (quoting *Morfoot v. Stake*, 190 N.E.2d 573, syllabus (Ohio 1963)).

Further, in construing a contract, a court must read and consider the provisions as a whole and not in isolation. *Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Auth.*, 678 N.E.2d 519, 527 (Ohio 1997). "Courts should not interpret contracts in a way that 'render[s] at least one clause superfluous or meaningless.'" *Transtar Elec., Inc. v. A.E.M. Elec. Servs. Corp.*, 16 N.E.3d 645, 651-52 (Ohio 2014) (quoting *Sloan & Co. v. Liberty Mut. Ins. Co.*, 653 F.3d 175, 181 (3rd Cir. 2011)).

The Court begins by analyzing the plain and ordinary meanings of the Limit of Liability and Payment of Loss provisions. First, the Limit of Liability provision provides that Esurance's limit of liability for a "loss" will be the lesser of either the "actual cash value of the . . . damaged property," the "[a]mount necessary to repair the property" to its pre-loss condition, or the "[a]mount necessary to replace the property" with similar property. (Doc. No. 7-1, PageID# 205.) In other words, the limit that Esurance will pay on a loss is the lowest amount between three possible options: the "actual

cash value" of the damaged property, the cost to repair the property, or the cost to replace the property. (*Id.*)

The Policy does not define "actual cash value." The Sixth Circuit recently addressed how to define the phrase "actual cash value" when the phrase is undefined in an insurance policy and concluded that the phrase can have two possible definitions. *Wilkerson v. Am. Fam. Ins. Co.*, 997 F.3d 666, 669 (6th Cir. 2021). In the insurance setting, "actual cash value" can be defined as the "fair market value" of the property, meaning "'[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's length transaction.'" *Id.* (quoting *Black's Law Dictionary* 1785 (10th ed. 2014)). Under this definition, "actual cash value" excludes the taxes and fees required to buy a replacement car. *Id.* (citing *Williams-Diggins v. Permanent Gen. Assurance Corp.*, 157 N.E.3d 220, 225 (Ohio Ct. App. 2020)). On the other hand, "the phrase 'actual cash value' in this insurance setting also can mean '[r]eplacement cost minus normal depreciation' for the damaged car." *Id.* (quoting *Black's Law Dictionary*, *supra*, at 1784). Under this alternative definition, "actual cash value" may include sales tax because that expense is "likely part of the typical 'replacement costs.'" *Id.* (citing *Ostendorf v. Grange Indem. Ins. Co.*, 2020 WL 134169, at *3 (S.D. Ohio Jan. 13, 2020); *Sos v. State Farm Mut. Auto. Ins. Co.*, 396 F. Supp. 3d 1074, 1080-81 (M.D. Fla. 2019)). Thus, there are two possible definitions of "actual cash value" that may apply to the instant Policy, one of which excludes the payment of sales tax.

However, the Court need not decide which definition of "actual cash value" applies to Romaniak's Policy because the Policy also contains a separate Payment of Loss provision, which reads in relevant part: "If **'we'** pay for **'loss'** in money, **'our'** payment will include the applicable sales tax for the damaged or stolen property." (Doc. No. 7-1.) The word "applicable" is defined as

"capable of or suitable for being applied : APPROPRIATE." *Applicable*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/applicable (last visited Sept. 10, 2021). The word "for" is defined as "used as a function word to indicate the object or recipient of a perception, desire, or activity," or "used as a function word to indicate an actual or implied enumeration or selection." *For*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/for (last visited Sept. 10, 2021). The phrase "damaged or stolen property" is derived from the Policy's definition of "loss." (Doc. No. 7-1, PageID# 182.) The Policy defines "loss" as "sudden, direct, and unintended physical damage; or theft." (*Id.*) The Court concludes that this provision plainly means that if Esurance pays for Romaniak's loss in money, its payment will include the appropriate sales tax connected to the damaged property—*i.e.*, Romaniak's totaled 2007 Pontiac G6 GT.

When the Court reads the plain meaning of these two provisions together, they provide that Esurance's limit of liability is the "actual cash value"—however that phrase may be defined—of Romaniak's totaled vehicle, and *further* provide that, should Esurance pay Romaniak in money for her loss, Esurance's payment will include the applicable sales tax for her totaled 2007 Pontiac G6 GT. *See Foster Wheeler*, 678 N.E.2d at 527 (in construing a contract, a court must read and consider the provisions as a whole, not in isolation). The Court need not decide which definition of "actual cash value" applies to Romaniak's Policy because Esurance's limitation of its liability to the "actual cash value" is accompanied by Esurance's separate and express promise to pay "applicable sales tax for the damaged . . . property" when Esurance pays for a loss in money. (*See* Doc. No. 7-1, PageID# 206.) Romaniak alleges that Esurance paid her in money for her loss, but that Esurance's payment did not include any sales tax for her damaged vehicle. (Doc. No. 7, ¶ 21.) Thus, the Court concludes that Romaniak has plausibly alleged a claim for breach of contract.

None of Esurance's arguments to the contrary are well-taken. First, Esurance's arguments as to the meaning of the Payment of Loss provision are not persuasive. Esurance asserts that the "express language of the Policy only requires payment of sales tax when it is 'applicable,' *i.e.*, after the loss vehicle has been replaced." (Doc. No. 10-1, PageID# 259.) In other words, according to Esurance, the "applicable" sales tax relates only to the replacement vehicle, not the damaged property. (*Id.*; *see also* Doc. No. 14, PageID# 381.) The problem with Esurance's argument, however, is that it conflicts with the plain language of the Policy. The Payment of Loss provision contains absolutely no reference to a replacement vehicle. Rather, as discussed above, the Policy specifies that if Esurance "pays for 'loss' in money, [its] payment will include the applicable sales tax *for*"—meaning connected to—"the damaged or stolen property." (Doc. No. 7-1, PageID# 206, emphasis added.) The Court declines Esurance's invitation to read the words "replacement vehicle" where they are clearly not written in the Policy.

Second, the Court rejects Esurance's argument that the Payment of Loss provision prescribes payments "to be calculated based on circumstances at the time of loss and afterwards—not retroactive payments for taxes that may (or may not) have been incurred when the insured vehicle was acquired years earlier." (Doc. No. 14, PageID# 381.) Again, nothing in the Policy language specifies that the phrase "applicable sales tax for the damaged or stolen property" is related to replacement costs. (Doc. No. 7-1, PageID# 206.) The Policy does not further define "applicable sales tax," other than to specify that it is related to the "damaged or stolen property." (*Id.*) If Esurance wanted to define "applicable sales tax" to mean something more specific, it could have done so.

Third, Esurance's argument that Romaniak's claim is barred by Ohio Administrative Code § 3901-1-54(H)(7)(f) is also unpersuasive. Ohio Adm. Code § 3901-1-54(H)(7)(f) provides:

> If within thirty days of receipt by the claimant of a cash settlement for the total loss of an automobile, the claimant purchases a replacement automobile, the insurer shall reimburse the claimant for the applicable sales taxes incurred on account of the claimant's purchase of the automobile, but not to exceed the amount that would have been payable by the claimant for sales taxes on the purchase of an automobile with a market value equal to the amount of the cash settlement. If the claimant purchases an automobile with a market value less than the amount of the cash settlement, the insurer shall reimburse only the actual amount of the applicable sales taxes on the purchased automobile. If the claimant cannot substantiate such purchase and the payment of such sales taxes by submission to the insurer of appropriate documentation within thirty-three days after receipt of the cash settlement, the insurer shall not be required to reimburse the claimant for such sales taxes. In lieu of reimbursement, the insurer may pay directly the applicable sales taxes to the claimant at the time of the cash settlement.

According to Esurance, because Romaniak failed to allege that she purchased a replacement vehicle within 30 days of receipt of Esurance's payment, she does not satisfy the requirements under Ohio Admin. Code § 3901-1-54(H)(7)(f) for payment of sales tax and, thus, her claim fails. (Doc. No. 10-1, PageID# 258; Doc. No. 14, PageID# 383.) The Court disagrees. The code is clear that the purpose of this rule "is to set forth uniform *minimum* standards for the investigation and disposition of" property insurance claims. Ohio Admin. Code § 3901-1-54(A) (emphasis added). "While it is true that the Code sets forth a minimum obligation, this is the statutory floor." *Ostendorf*, 2020 WL 134169, at *3. Parties are free to bargain for greater insurance coverage within an insurance policy than is provided for by state regulations. *Id.* In this case, Esurance expressly agreed to pay applicable sales tax for damaged property when it paid for a loss in money. (Doc. No. 7-1, PageID# 206.) The Court concludes that this argument lacks merit.

Fourth, as a more general matter, the Court observes that Esurance repeatedly misconstrues and misrepresents the allegations in Romaniak's Amended Complaint and the arguments in her Opposition. Esurance repeatedly argues that Romaniak purportedly asserts that the phrase "actual cash value" includes vehicle sales tax. (Doc. No. 10-1, PageID# 250.) Romaniak's Amended

11

Complaint contains no such assertion. (*See* Doc. No. 7.) Rather, Romaniak explicitly alleges that Esurance breached its Payment of Loss provision promise to pay the applicable sales tax for the damaged property. (Doc. No. 7, ¶ 13.)

Esurance devotes significant parts of its briefing to arguments related to the phrase "actual cash value" and insists that "actual cash value" does not include vehicle sales tax. (Doc. No. 10-1, PageID# 251-57.) Esurance urges the Court to apply the reasoning found in cases such as *Wilkerson v. Am. Family Ins. Co.*, *Williams-Diggins v. Permanent Gen. Assur. Corp.*, *Singleton v. Elephant Ins. Co.*, *Coleman v. Garrison Prop. & Cas. Ins. Co.*, and *Cody v. Allstate Fire & Cas. Ins. Co.* (*Id.*) The problem for Esurance, however, is that *none* of these cases involved Payment of Loss language similar to the language at issue here. *See Wilkerson v. Am. Family Ins. Co.*, No. 1:19-CV-2425, 2020 WL 5891971 (N.D. Ohio Oct. 5, 2020), *aff'd* 997 F.3d 666 (6th Cir. 2021); *Williams-Diggins v. Permanent Gen. Assur. Corp.*, 157 N.E.3d 220 (Ohio 8th Dist. Ct. App. 2020); *Singleton v. Elephant Ins. Co.*, 953 F.3d 334 (5th Cir. 2020); *Coleman v. Garrison Prop. & Cas. Ins. Co.*, No. 19-C-1745, 2020 WL 489527 (N.D. Ill. Jan. 30, 2020), *aff'd* 839 Fed. App'x 20 (7th Cir. 2021); and *Cody v. Allstate Fire & Cas. Ins. Co.*, No. 3:19-CV-1935-K, 2021 WL 389768 (N.D. Tex. Feb. 3, 2021). However, as discussed *supra*, the Court need not determine whether "actual cash value" includes sales tax because the instant Policy, *unlike the policies in Esurance's cited cases*, contains an express promise to pay the applicable sales tax for the damaged property if Esurance pays for the loss in money. None of Esurance's cited cases include any similar provision.

This case is far more similar to two of Romaniak's supplemental authorities, *Wagner v. Safeco Ins. Co. of Ill.*, No. CI 20-10735 (Douglas Cty. Dist. Ct., May 10, 2021), and *Grela v. LM Gen. Ins. Co.*, No. 2020 CH 04911 (Cook Cty. Cir. Ct., July 20, 2021). (*See* Doc. Nos. 13-1, 19-1.) The

policies at issue in *Wagner* and *Grela* contained Payment of Loss provisions identical to the provision at issue here. (*See Wagner*, Doc. No. 13-1, PageID# 360; *see Grela*, Doc. No. 19-1, PageID# 459.) The *Wagner* court concluded that, when read together, the Payment of Loss provision and the Limit of Liability provision "provide that Safeco's limit of liability will be the 'actual cash value' of Wagner's damaged property, and that if Safeco elects to pay Wagner in money the actual cash value of his damaged property, such payment will include the applicable sales tax for his damaged property." (Doc. No. 13-1, PageID# 363.) Similarly, the *Grela* court, ruling from the bench, denied the defendant-insurer's motion to dismiss because "the policy itself expressly states, if payment for loss is made in money, it will include applicable sales tax irrespective of what the administrative code says . . . ." (Doc. No. 19-1, PageID# 467.) The Court agrees with Romaniak that the instant Policy's plain language dictates the same result here.

Finally, Esurance's argument that Romaniak's Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of standing is not persuasive. Esurance argues that Romaniak cannot establish standing because the Policy language—"applicable sales tax for damaged . . . property"—only requires Esurance to pay sales tax *after* a policyholder has incurred sales tax on the purchase of a new vehicle. (Doc. No. 10-1, PageID# 259.) The Court addressed Esurance's erroneous interpretation of the phrase "applicable sales tax for damaged . . . property" *supra*. The Payment of Loss provision is silent with respect to replacement vehicles and specifies that the "applicable sales tax" is related to the "damaged . . . property"—*i.e.*, Romaniak's 2007 Pontiac G6 GT. (Doc. No. 7-1, PageID# 206.) Whether Romaniak incurred sales tax charges on a replacement vehicle is irrelevant. The Policy expressly provides that if Esurance pays for a loss in money, its payment will include the "applicable sales tax for the damaged . . . property." (Doc. No. 7-1, PageID# 206.)

13

Romaniak alleges that she did not receive the benefit of her bargain with Esurance when it failed to pay her the applicable sales tax for her totaled Pontiac G6 GT. (Doc. No. 7, ¶ 21.) Accordingly, the Court concludes that Romaniak adequately pleaded an injury-in-fact.

IV. **Conclusion**

Accordingly, for the reasons set forth above, Esurance's Motion to Dismiss is DENIED.

**IT IS SO ORDERED.**

Date: September 14, 2021

   _s/Pamela A. Barker_
PAMELA A. BARKER
U. S. DISTRICT JUDGE