**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARIE ROMANIAK,** | ) | **CASE NO:  1:20-CV-02773** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE:  PAMELA A. BARKER** |
| | ) | |
| **vs.** | ) | **MAGISTRATE JUDGE:  WILLIAM H.** |
| | ) | **BAUGHMAN, JR.** |
| **ESURANCE PROPERTY AND** | ) | |
| **CASUALTY INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**
**OF PROPOSED CONSOLIDATED CLASS ACTION SETTLEMENT**

Plaintiff Marie Romaniak submits this unopposed Motion and respectfully request that the Court preliminarily approve the proposed class action settlement described in detail in the Class Action Settlement Agreement and exhibits thereto ("Agreement"), attached hereto as Exhibit A and incorporated by reference, between Plaintiff and Defendant Esurance Property and Casualty Company, as defined in the Settlement Agreement ("Defendant" or "Esurance").

## I.      CONCISE STATEMENT OF THE RELIEF REQUESTED

Plaintiffs file this motion requesting that the Court preliminarily approve this class action settlement and preliminarily certify a settlement class, which would resolve the claims of Plaintiff and the Class members in their entirety. Plaintiffs request that the Court grant preliminary approval of the proposed settlement and enter an order of preliminary approval that includes the content of the proposed order attached as Exhibit F to the Agreement.

The proposed preliminary approval order approves the form of notice to be given to the class, establishes a schedule and process for the submission of any objections or requests for exclusion from the class, and provides for a fairness hearing to be held by the Court. The parties

will submit a motion requesting final approval of the settlement, which would include the content of the draft final order set forth as Exhibit E to the Agreement, in advance of the fairness hearing.

## II.     STATEMENT OF THE BASIS FOR THE REQUEST

The Parties reached the Settlement Agreement after over eighteen months of litigation and the Agreement is the product of substantial, contentious negotiations between the parties through mediation facilitated by mediator Ben Newman. *See* McLaughlin on Class Actions § 6:7 (12th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion."); *City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement.").

The Parties have reached a settlement agreement for the purpose of providing to Settlement Class Members who submit a valid claim payment of sales tax in the amount of the applicable state and local surtax at the time of loss, calculated as a percentage of the underlying vehicle value ("ACV Sales Tax"). If Defendants originally included a partial sales tax amount in the total-loss payment, the Settlement Class Member will receive ACV Sales Tax less that partial amount originally included in the total-loss payment. This constitutes 100% of the damages sought by Plaintiffs in the respective Complaints and Plaintiffs estimate that the total Settlement cash benefits is approximately $2.45 million. Defendant has also agreed to separately pay (i) attorneys' fees and costs and Service Award approved by the Court and (ii) settlement administration costs. Finally, Defendant has agreed to change its business practice moving forward to begin including ACV Sales Tax without requiring the policyholder to provide proof that the policyholder purchased a replacement vehicle and without regard to whether the loss vehicle is leased or owned.

## III.     MEMORANDUM OF LEGAL AUTHORITY

### a.  Litigation Background

This case involves allegations that Defendants breached automobile insurance policies issued to Plaintiff and members of the proposed class by failing to include in payments for total loss vehicles an amount for sales tax calculated based on the sales tax that would be due upon purchase of a comparable vehicle. Exhibit B ("Gold Decl.") ¶¶ 3-5. Defendant's practice and procedure concerning sales tax depended on whether the insured submitted proof of replacement within thirty days of the claim. If not, Defendants did not pay any sales tax as part of its total-loss claim payment. If the insured submitted proof of replacement, Defendant would reimburse the incurred sales tax up to the amount that would have been owed on the total-loss vehicle. *Id*. at ¶¶ 7-8.

The aforementioned facts were elicited through discovery conducted during this litigation. *Id*. at ¶ 9. Plaintiffs allege that conditioning payment of sales tax on proof of replacement and the failure to pay the full ACV Sales Tax—calculated as the applicable percentage of the underlying total-loss vehicle value—constituted a breach of Defendant's form insurance Policy. Defendant maintains that its practices and procedures were valid and lawful pursuant to its Policy and Ohio law. Defendant has agreed, moving forward in Ohio, to include in payments for total loss vehicles an amount for sales tax calculated as the applicable state and local percentage of the adjusted vehicle value without condition of replacement, unless and until 1) it implements a change in the insurance policy forms permitting or requiring a different practice and procedure or 2) the Ohio Supreme Court, the Sixth Circuit, or the Ohio Department of Insurance issues an opinion/law requiring a different practice or procedure. Agreement at ¶ 77; *see also* Gold Decl. at ¶ 21.

### b.  The Proposed Settlement

The proposed settlement requires Defendant to pay to Settlement Class Members who submit a valid claim a cash payment in the amount of ACV Sales Tax, less any amount in sales tax that was included in the original total-loss payment. Agreement at ¶¶ 59-76. Defendant has agreed to include ACV Sales Tax without precondition in its total-loss claim, as set forth above, calculated as the applicable state plus local percentage on the adjusted vehicle value of the total-loss vehicle. *Id*. at ¶ 77. And Defendant has agreed to separately pay attorneys' fees and costs up to $575,000.00, a Service Award of up to $5,000.00, and settlement administration costs, none of which will reduce or impact in any way the damages to which Class Members are entitled.

### 1. Approximately $3.38 Million Monetary Value

Based on Defendants' records and data and the relevant Class Period, Plaintiffs calculate that the monetary benefits total $2.45 million and that the value of the change in business practice is approximately $306,000.00 per year. *Id*. at ¶¶ 22-24.[1] When adding the attorneys' fees and costs, estimated settlement administration costs of $50,000.00, and one year of benefits due to the change in business practice, the total settlement value is approximately $3.38 million.[2] Because Defendant only maintains the overall payment amount in spreadsheet format—which might include, for example, payments for towing or storage which are unrelated to the vehicle—determining the amount (if any) that was paid for sales tax on a given claim will require a detailed review of the claim file to assess the basis for each payment that was made and what was included in that

---

[1] This is a conservative estimate, because it is based on an average of vehicle values over the whole class period. But of course the average vehicle value in 2022 is far higher than the average vehicle value in, say, 2016. As such, the change in business practice benefits are likely far higher than $306,000.00.

[2] Because attorneys' fees and costs and settlement administration costs are being paid separately by Defendant (and are not coming from or reducing payment to Class members), they are considered part of the total settlement value. *See Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016) ("The Total Benefit to the class includes the benefit to class members, the attorney's fees and may include costs of administration") (cleaned up).

payment. Gold Decl. at ¶ 14. The proposed settlement provides for Defendant to review the files of class members who make claims in the settlement to make these determinations, which will be confirmed by Class Counsel.

## 2.   Likelihood of Success is Uncertain

If the case were to proceed through final judgment in the three cases, and then an appeal to the Sixth Circuit, both sides would bear risk. The putative class would bear the risk of recovering nothing if class certification were denied or reversed on appeal, or if judgment was entered in favor of Defendants or a judgment in favor of the class was overturned on appeal. *Id.* at ¶¶ 13-16. Notably, the Sixth Circuit and the Seventh Circuit have recently ruled in favor of an insurance company on a similar claim, albeit under different policy language. *Wilkerson v. Am. Family Ins. Co.*, 997 F.3d 666 (6th Cir. 2021). Notably, the Court specifically referenced the potential relevance of the applicable Ohio regulation, but observed that "neither party cited this regulation or suggested that it should affect our interpretation of the insurance policy" and "[w]e thus need not consider the regulation." *Id.* at 673. The Court did not indicate either way whether it would have found that the regulation's permission to pay sales tax only upon proof of replacement governs had it considered the regulation. But the Seventh Circuit agreed with Defendants that an insurance regulation is incorporated into insurance policies and establishes the relevant standard for whether sales tax is owed on a total-loss claim (albeit, again, under difference insurance policy language). *Sigler v. Geico Cas. Co.*, 967 F.3d 658 (7th Cir. 2020). Plaintiff believes the claim is meritorious, and that this Court's Order denying the motion to dismiss, Dkt. No. 22, was correctly decided and would have controlled the analysis at summary judgment—but clearly, these cases and the fact that there is no guidance from the Sixth Circuit demonstrates the inherent risk of continuing litigation. Gold Decl. at ¶¶ 13-16. For its part, Esurance maintains that conditioning

payment of sales tax on proof of replacement complies with the regulation—and therefore its policy—and that it had a significant chance of successfully defending on the merits and as to class certification absent settlement. Agreement at pg. 2.

### 3. The Settlement Provides for a Limited Release, Robust Notice, and a Simple Claims Process

For the convenience of settlement class members in submitting claims, Esurance will extract available information from its claim records to pre-fill information on the claim forms. *See* Agreement at Exhibit 1. Notice will be provided via direct mail and will include a pre-filled, postage-prepaid claim form, and via email on two additional occasions (to Class Members for whom Defendants possess an email address), which will include a hyperlink to access a pre-filled electronic claim form. Agreement at ¶¶ 42-48. The claim submission process is extremely simple, requiring merely that Class Members confirm the prefilled information, including their current address, is correct, sign the form, and drop the postage-prepaid form in the mail—and the Settlement also provides for a website where insureds can make the same confirmation and submit the claim form electronically. *Id*. Additionally, the release is narrowly tailored to the precise claim alleged in this litigation relating to payment of sales tax without precondition. *Id*. at ¶ 23. The release specifically notes that Class members are ***not*** releasing claims relating to the calculation of the value of the vehicle except as to payment of sales tax. *Id*.

This type of settlement structure, under which class members submit pre-filled, postage prepaid claim forms if they wish to make a claim for payment in the settlement process, is regularly approved by federal courts. *See, e.g.*, *Bastian v. United Servs. Auto. Ass'n*, 2017 U.S. Dist. LEXIS 180757 (M.D. Fla. Nov. 1, 2017) (approving similar claims-made settlement in class action concerning total-loss vehicles where USAA's internal procedure for payment of sales tax in Florida was materially identical to Defendants' procedure in Ohio and Illinois); *Cook v. Gov't*

*Emples. Ins. Co.*, No.: 6:17-cv-891-ORL-40KRS, 2020 U.S. Dist. LEXIS 111956 (M.D. Fla. Jun. 22, 2020) (same); *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016) (affirming a claims-made class action settlement as fair and reasonable); *Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 628 (11th Cir. 2015) (same); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 783 (N.D. Oh. 2010) (approving settlement that required claim submissions to establish entitlement to settlement proceeds).

### 4.  Attorneys' Fees Are Reasonable

The proposed settlement further provides that class counsel may make an application for attorneys' fees not to exceed $575,000.00. Agreement at ¶ 80. This constitutes approximately 17.0%-18.7% of the settlement value, either of which is significantly ***below*** the Sixth Circuit's benchmark for attorneys' fees.[3] *Kis v. Covelli Enters.*, Nos. 4:18-cv-54; 4:18-cv-434, 2020 U.S. Dist. LEXIS 93929, at *17, n.69 (N.D. Oh. May 29, 2020) (approving fee award of 30% and citing cases that note the typical range of class action attorneys' fees is 20-30% of settlement value); *Shanahan v. Keybank*, No. 1:19cv2477, 2021 U.S. Dist. LEXIS 50516, at *13 (N.D. Oh. Mar. 16, 2021) (approving fees of 33 1/3%);  *see also Gascho*, 822 F.3d at 282 (when conducting a percentage of the fund analysis, "attorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class, which includes the benefit to class members, the attorney's fees and may include costs of administration") (cleaned up); *Rikos v. Proctor & Gamble Co.*, No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722, at *8 (S.D. Ohio Apr. 30, 2018) (to calculate total

---

[3] The difference depends on whether this Court considers the change in business practice and resulting benefits as part of the Settlement benefits for purposes of analyzing attorneys' fees. *Cf. Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339, 1342-43 (S.D. Fla. 2007) (courts consider maximum cash benefits and value of injunctive relief when applying benchmark attorneys' fees of 20%-30%); *see also* Gold Decl. at ¶ 30.

settlement benefits amount, "courts include all amounts benefitting the class, including those amounts typically borne by the class, such as attorneys' fees and notice and administration costs").

This amount equates to Class Counsel's lodestar, utilizing rates recently approved for each timekeeper in recent class action litigation, with a 1.8 multiplier. Gold Decl. at ¶¶ 31-33. This is also comfortably within the range courts consistently find reasonable in class litigation. *See generally Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 517 (6th Cir. 1993) (approving 2.0 multiplier); *Shanahan*, 2021 U.S. Dist. LEXIS 50516, at *13 (approving a multiplier of 3.75 in class litigation as reasonable); *Bower v. MetLife, Inc.*, 2012 U.S. Dist. LEXIS 149117, at *23-24 (S.D. Oh. Oct. 17, 2012) (collecting cases demonstrating that multipliers ranging from 1.75 to 5.0 are considered reasonable in class litigation). As such, and as Plaintiffs will more fully demonstrate in the forthcoming fee petition, the attorneys' fees amount is reasonable whether this Court uses the "percentage-of-the-fund" approach or the lodestar approach.

### c.  Class Certification Is Warranted

Plaintiffs submit that certification of the proposed Settlement Classes is appropriate. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Respectfully, this Court should conclude that it is likely to certify the Settlement Class and approve the Settlement as fair, adequate, and reasonable. *See* Rule 23(e)(1). Certification will allow Notice of the Settlement terms to issue to Settlement Class members; of their right to be heard on its fairness; of their right to opt-out or object; and of the Final Approval Hearing. *See* Manual for Compl. Lit.,

§§ 21.632, 21.633. Defendants does not oppose certification for settlement purposes.[4] Each Fed. R. Civ. P. 23(a) and (b)(3) requirement is satisfied here for the Settlement Classes, defined to include Esurance's Ohio insureds who submitted first-party auto total-loss claims under comprehensive or collision coverage during the relevant time-period. The full class definition (including exclusions) is set forth in the Agreement at ¶ 34.

The numerosity requirement is satisfied for purposes of settlement because Defendant's records and spreadsheet data and a review of sample claims demonstrates there are likely over 4,000 members of the Settlement Class. Gold Decl. at ¶ 35. This easily satisfies the numerosity requirement. *See generally Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (explaining that "while there is no strict numerical test, substantial numbers usually satisfy the numerosity requirement").

Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The claims must depend on a common contention of which "its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Sprague v. GMC*, 133 F.3d 388, 397 (6th Cir. 1998) (to satisfy commonality there "need only be one issue common to the class"). Here, the commonality requirement is satisfied because there is a common question of law concerning whether Defendant's standard and uniform Policy promise to include sales tax when making payment in money requires Defendant to pay sales tax without precondition or whether, instead, the total-loss regulations govern and permit Defendant to condition payment of

---

[4] Although Defendant does not oppose certification of the Settlement class, and has agreed to settle the Settlement Class claims as set forth herein, Defendant does not concede that certification of a litigation class, as opposed to a settlement class, would be appropriate here, and the Parties have stipulated in the Agreement that this Agreement does not constitute a waiver of any defenses Defendant has to a litigated class if the proposed Agreement is not approved.

sales tax only upon proof of replacement. This issue applies to all claims of the proposed Settlement Classes and every Settlement Class member, and its resolution would resolve an issue central, indeed dispositive, to every class member claim. Gold Decl. at ¶ 36.

Rule 23(a)(3) requires that the class representative's claim(s) be typical of the claims of the Settlement Class. Fed. R. Civ. P. 23(a)(3). Typicality is established where the plaintiff's claim "arises from the same event or practice or course of conduct [as class members]" and are "based on the same legal theory." *Am. Med. Sys.*, 75 F.3d at 1079. In other words, "as goes the claim of the named plaintiff"—favorably or unfavorably—"so go the claims of the class." *Sprague*, 133 F.3d at 399; *see also Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561-562 (6th Cir. 2007) (typicality met where representative's claim was premised on the same injury as class members). Here, the typicality requirement is satisfied because Plaintiff's claim is based on precisely the same legal theory and "pattern or practice" as every Settlement Class Member: that Defendant owed ACV Sales Tax without precondition and, thus, Defendant's "pattern or practice" of conditioning payment of sales tax on proof of replacement constituted a breach of contract. Gold Decl. at ¶ 28. Further, Plaintiffs' claims are typical of the Class Members because Plaintiffs and every Class Member were insured under form Policies containing materially identical language—namely, the promise to "include" sales tax in money payments. *Id*. at ¶ 37.

Rule 23(a)(4) requires that "the representative parties ... fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This involves two criteria: "1) the representative must have common interests with unnamed [class] members…and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young*, 693 F.3d at 543. The court should "review[] the adequacy of class representation to determine whether class counsel  are qualified, experienced and generally able to conduct the

litigation." *Id.* Class Counsel's declaration demonstrates that Plaintiff adequately performed her duties as class representative. Gold Decl. at ¶ 39. There is no evidence Plaintiff possesses interests in conflict with the proposed Classes. *Id.* at ¶ 40. The declaration also demonstrates that Class counsel competently represented the proposed class to date and are qualified to represent the settlement class. *Id.* at ¶¶ 41-57. Further, Class Counsel has litigated other similar class actions with successful results and have been appointed Class Counsel by numerous courts. *Id.*

Rule 23 requires a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance is established where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole…predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564. An absence of individual issues is not necessary. *See Young*, 693 F.3d at 544. Courts routinely find predominance is established where the claim turns on interpretation of uniform contract terms. *E.g.*, *Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.*, 935 F.3d 496, 506 (6th Cir. 2019) ("Breach of contract claims arising out of a standardized, form contract ordinarily are suitable for class certification…"). Here, the common question—whether Defendant's form Policy requires payment of ACV Sales Tax without precondition—predominates over any individual question. Essentially the only "individual" question, such as it is, concerns the amount of damages to which Class Members are entitled, which does not preclude a finding of predominance. *Brown v. Electrolux Home Products, Inc.*, 817 F. 3d 1225, 1239 (11th Cir. 2016) (noting the "black-letter rule" that individual questions of damages do not predominate over common questions of liability).

As to the superiority factor, "cases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Young*, 693 F.3d at 545. To determine if class-wide adjudication is proper, courts consider: (A) the interest in individually controlling prosecution; (B) whether other litigation has commenced; (C) the desirability of concentrating litigation; and (D) manageability. *Beattie*, 511 F.3d at 564. Here, common issues are central to the litigation and the individual damages, on average, are less than $1,000.00 per class member, which easily satisfies the first prong of the superiority analysis. *See generally Chapman v. Tristar Prods.*, No. 1:16-CV-1114, 2017 U.S. Dist. LEXIS 61767, at *16 (N.D. Oh. Apr. 24, 2017) ("The most compelling rationale for finding superiority in a class action is the existence of a negative value suit, which is where the costs of enforcement in an individual action would exceed the expected individual recovery") (cleaned up). The remaining prongs also favor class treatment: no action was "already commenced" by any member of the class, it is desirable and efficient to concentrate Class Members' identical claims in this forum, and Plaintiffs are unaware of any difficulties in the management of this Settlement. Gold Decl. at ¶ 38.

For these reasons, certification of the Settlement Class is appropriate.

**d.  Preliminary Approval Is Warranted**

There is a strong federal policy "favoring settlement of class actions." *UAW v. General Motors Corp.*, 497 F.3d 615, 633 (6th Cir. 2007). Preliminary approval—which simply permits Notice of the settlement to be provided to the Class—is a relatively limited inquiry where the court's role is to "evaluate whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Hyland v. HomeServices of Am., Inc.*, No. 3:05-CV-612, 2012 U.S. Dist.

LEXIS 4818, at *2 (W.D. Ky. Jan. 17, 2012) (cleaned up). These requirements are readily satisfied here, as demonstrated above and in the exhibits hereto.

As will be set forth in greater detail in the Motion for Final Approval, the Fed. R. Civ. P. 23(e) factors all favor approval. *See generally Cook*, 2020 U.S. Dist. LEXIS 111956, at *16-17 (explaining that Rule 23 was amended to add factors relevant to approval of class settlements, which was intended to highlight the "core concerns" of Rule 23, but not to displace factors prescribed by appellate courts). The factors outlined in *UAW*, 497 F.3d at 631—which remain relevant to the analysis—also favor approval.

### 1. The Rule 23 Threshold Factors Favor Approval

Fed. R. Civ. P. 23(e)(2) contains two threshold procedural requirements: adequate representation and arms-length negotiations. Both favor preliminary approval here.

The adequate representation analysis under Rule 23(e) "is distinct from Rule 23(a)(4) and is meant to address whether the class representatives possessed sufficient information and knowledge of the claims, issues, and defenses prior to negotiating and settling the claims." *Cook*, 2020 U.S. Dist. LEXIS 111956, at *18. This overlaps with one of the *UAW* factors, i.e., "the amount of discovery engaged in by the parties[.]" 497 F.3d at 631. Here, Plaintiffs engaged in over eighteen months of litigation and had engaged in significant discovery prior to reaching settlement. Gold Decl. at ¶ 10. For example, Plaintiff secured numerous documents and spreadsheet data for over 6,000 claims containing hundreds of thousands of data inputs. The parties also fully briefed the motion to dismiss. Moreover, the undersigned have litigated numerous similar class actions, including against Esurance, and have detailed knowledge about the strengths and weaknesses of the claims, as well as Defendant's data systems, practices, and procedures. *Id*. at ¶ 11. The Rule 23 adequate representation factor and the *UAW* "amount of discovery" factor both clearly favor

preliminary approval. *See generally Satterly v. Airstream, Inc.*, 2020 U.S. Dist. LEXIS 210868, at *16-17 (S.D. Oh. Sep. 25, 2020) (that plaintiffs had "exchanged written discovery and relevant information, engaged in further independent investigation, confirmed damages calculations with a third-party expert, and conducted additional legal research regarding the claims and defenses in the lawsuits" militated in favor of approving a class settlement).

As for the second procedural factor, settlement was reached only with the assistance of Ben Newman, an experienced and well-respected mediator. Gold Decl. at ¶¶ 17; Exh. C (Decl. of Mediator Ben Newman). The negotiations were unquestionably conducted as arms' length. Moreover, the Parties extensively litigated numerous issues, including fully briefing the dispositive motion to dismiss, which this Court denied. Thus, the Rule 23 "arms' length" and the *UAW* "lack of fraud or collusion" factor both weigh in favor of preliminary approval. *See generally Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion"); *Bourne v. Ansara Rest. Grp., Inc.*, 2016 U.S. Dist. LEXIS 114399, at *6 (E.D. Mich. Aug. 26, 2016) (risk of collusion "is minimal" where parties fully briefed a motion to dismiss prior to reaching settlement).

## 2.    The Rule 23 Substantive Factors Favor Approval

Fed. R. Civ. P. 23(e)(2)(C)-(D) prescribe the factors relevant to determining whether a proposed Settlement is substantively adequate: the costs and risk of trial and appeal, the method of claim distribution, the terms of attorneys' fees, and whether class members are treated equitably vis a vi each other.

Plaintiff believes the Agreement is beneficial to the Class for several reasons, as can be seen between a comparison of the likelihood of ultimate success and the relief secured through the

settlement.[5] *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 130467, at *47-50 (N.D. Oh. Sep. 23, 2016) (analyzing the fairness of a proposed settlement by comparing the benefits provided by the settlement to the damages potentially available at trial in light of the odds of success); *see generally In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) ("The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured."). Although Plaintiffs intend to explicate why the settlement is beneficial to the class in greater detail when moving for final approval, Plaintiffs briefly note that as set forth above, the likelihood of success is uncertain. Both the Sixth and Seventh Circuits recently ruled against insureds alleging a materially identical theory. Of particular note is that the Seventh Circuit adopted the argument Defendant makes in this litigation, i.e., that minimum regulatory requirements imposed by a state govern the relevant rights and obligations of an insurance policy issued in that state. Plaintiffs disagree with these decisions, but, at the very least, they signify the substantial amount of risk inherent to continuing litigation rather than agreeing to the proposed Settlement. Gold Decl. at ¶¶ 13-16.

Given this risk—and even absent it—the value of the Settlement is significant and impressive. First, the Settlement makes available damages in the amount of essentially 100% of the amount that could have been secured at a litigated judgment if Plaintiffs prevailed entirely on

---

[5] Comparing (a) the benefits secured through settlement with (b) the benefits potentially available at trial divided by the chances of success is consistent both with Fed. R. Civ. P. 23(e)(2)(C)(i) and with two *UAW* factors, i.e., "the complexity, expense and likely duration of the litigation and the likelihood of success on the merits." 497 F.3d at 631 (cleaned up).

the claim.[6] Gold Decl. at ¶ 20. This level of success in obtaining benefits through a Settlement is extremely rare. *See Lee v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 121998, at *7 (S.D. Fla. Sep. 14, 2015) (settlements that "provide near-complete relief to class members on a claims-made basis" are an "extraordinary result"); *cf. In re Polyurethane Foam Antitrust Litig.*, 2015 U.S. Dist. LEXIS 23482, at *5 (N.D. Ohio Feb. 26, 2015) (approving settlement that provided for 18% of the damages that could have been achieved at trial); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, 2005 U.S. Dist. LEXIS 9705, at *9 (E.D. Pa. May 19, 2005) (approving of settlement that provided for 11.4% of damages). Additionally, the Notice to which the Parties agree is robust and comprehensive. Gold Decl. at ¶ 27. Defendant agreed to send individual Notice by direct mail (including provisions to ensure any class member who changed addresses is located) and by email on two occasions, thus providing significant assurance that Class Members will receive Notice. Agreement at ¶¶ 42-48; *see also Hogan v. Cleveland Ave Rest. Inc.*, No. 2:15-CV-2883, 2019 U.S. Dist. LEXIS 212214, at *10 (S.D. Oh. Dec. 10, 2019) (noting the "robust notice" in determining whether to preliminarily approve a class settlement).

Second, the "method of processing class-member claims" is simplicity itself: The Claim form is pre-filled, postage pre-paid, and Class Members must simply attest to the information and send the Claim form back (or, if necessary, update their address). Agreement at Exhibit 1; *see Wilson v. EverBank*, 2016 U.S. Dist. LEXIS 15751, at *32-33 (S.D. Fla. Feb. 3, 2016) (finding significant that class members need not submit any evidence or documentation beyond merely "checking a box" which "should take no more than a few minutes for the average claimant to complete."); *Manjunath A. Gokare, P.C. v. Fed. Express Corp.*, No. 2:11-CV-2131-JTF-CGC,

---

[6] Plaintiffs arguably have a minimal claim for prejudgment interest, which is not provided for in the Settlement Agreement and which is the only thing necessitating the "essentially" qualifier.

2013 U.S. Dist. LEXIS 203546, at *9 (W.D. Tenn. Nov. 22, 2013) (approving a settlement where "the claim form is extremely simple, includes a postage-paid, pre-addressed envelope and does not require Settlement Class Members to…provide any back-up documentation."). Moreover, Class Members will be provided a ClaimantID that can be used to access a pre-filled electronic claim, requiring merely an electronic attestation and clicking a "Submit Claim" button.[7]

Third, the terms of the attorneys' fees award weigh in favor of approval of the proposed Settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). The analysis here is "distinct from the Rule 23(h)" analysis, which addresses whether the attorneys' fees amount is reasonable on its own terms, and "instead addresses if and how the attorneys' fees impacted the terms of the Settlement." *Cook*, 2020 U.S. Dist. LEXIS 111956, at *24. Here, the attorneys' fees amount did not impact the substantive Settlement terms at all—indeed, the parties did not even discuss attorneys' fees until after all other Settlement terms were finalized. Gold Decl. at ¶ 18. Further, Defendant has agreed to separately pay attorneys' fees and costs (in the amount approved by the Court), meaning that the attorneys' fee award will not decrease or impact in any way the payments to Settlement Class Members. *See Hicks v. State Farm Fire & Cas. Co.*, 2021 U.S. Dist. LEXIS 227148, at *13 (E.D. Ky. Nov. 8, 2021) (finding that Rule 23(e)(2)(C)(iii) favored settlement "particularly given the fact the fee will not reduce the amount the class members receive"). As such, Rule 23(e)(2)(C)(iii) favors approval of the proposed Settlement.

---

[7] In a recent case, the settlement required class members to identify "contact information, [] the Sonic location where they made their purchase, and the last four digits of the payment card number they used to make the purchase and whether the fraud occurred before February 28, 2018 (if applicable)." *In re Sonic Corp.*, 2019 U.S. Dist. LEXIS 135573, at *15 (N.D. Oh. Aug. 12, 2019). Even this process was considered simple enough to militate in favor of settlement. Here, the proposed Settlement contemplates a far simpler process, where class members merely attest to pre-filled information on a postage-prepaid (or electronic) claim.

Finally, Class Members are clearly treated equitably, in that they will receive the same Notice, the same claim process, are agreeing to precisely the same release, and are entitled to the same benefits: sales tax calculated as a percentage of their vehicle's underlying value.[8]

As such, all the Rule 23(e)(2)(C)-(D) factors militate in favor of approval.

### 3.        The Remaining *UAW* Factors Favor Approval

The *UAW* factors that are independent of the Rule 23 factors—i.e., the opinions of class counsel and the public interest, *see* 497 F.3d at 631—also support approval of the proposed Agreement.[9] Class Counsel possess extensive institutional knowledge of Defendant's procedures and data systems, as well as the relative strengths and weaknesses of the underlying claim, and it is their reasoned judgment that the proposed Settlement is in the best interests of the Class. Gold Decl. at ¶¶ 11, 58; *see also Brent v. Midland Funding, LLC*, 2011 U.S. Dist. LEXIS 98763, at *49-50 (N.D. Oh. Sep. 1, 2011) ("The Court gives great weight to the recommendation of experienced counsel for the parties in evaluating the adequacy of the settlement."); *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, district courts should be hesitant to substitute its own judgment for that of counsel") (cleaned up). Moreover, "settlement fosters the goals of certainty, finality and economy, which lie at the heart of our general preference for settlement of class actions." *Berry v. School Dist.*, 184 F.R.D. 93, 106 (W.D. Mich. 1998). And because of the valuable compensatory relief secured and the

---

[8] While the Settlement provides for Plaintiff to petition for a Service Award of no more than $5,000.00, courts generally analyze Service Awards standing alone, and not within the rubric of Fed. R. Civ. P. 23(e)(2)(D). *See, e.g.*, *In re Sonic*, 2019 U.S. Dist. LEXIS 135573, at *16-18 (analyzing Service Awards separately from Rule 23(e)(2)(D)). Whether the proposed Service Awards are reasonable will be addressed in the forthcoming fee petition. *See also Shanahan*, 2021 U.S. Dist. LEXIS 50516, at *13 (approving Service Awards of $10,000.00 as reasonable).

[9] The final factor is the response from the Class, but that factor is irrelevant until the Hearing on Final Approval, after Notice is provided and Class Members are given the opportunity to opt out or object.

beneficial change in business practice, the Settlement "does its best to ensure that Defendants can continue to provide valuable service to Class Members in an atmosphere that will foster trust and confidence." *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 372 (S.D. Oh. 1990).

For these reasons, all Rule 23(e) and *UAW* factors militate in favor of preliminary approval of the proposed Settlement.

### 4. The Claims-Made Structure Does Not Undermine Approval

The Settlement includes a claims-made structure, which does not impact the "fairness, reasonableness, or adequacy of proposed settlement." *Hamilton v. SunTrust Mortg. Inc.*, 2014 U.S. Dist. LEXIS 154762, at *18 (S.D. Fla. Oct. 24, 2014). Defendant made clear it would not settle absent the claims-made structure. Gold Decl. at ¶ 59. And as courts have explained, whether a settlement compares favorably to a hypothetical settlement to which the parties did not agree is irrelevant. *See, e.g.*, *Casey v. Citibank, N.A.*, 2014 U.S. Dist. LEXIS 156553, at *6 (N.D. N.Y. Aug. 21, 2014) (while direct payment may have resulted in more class members receiving some payment, "there is no reason to believe the defendants would agree to such terms" and thus the feasibility of direct payment "is irrelevant") (citing *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) (because the inquiry into a proposed settlement structure "is limited to whether the settlement is lawful, fair, reasonable and adequate[,] . . . [an objector] must do more than just argue that she would have preferred a different settlement structure")). The question is not whether a claims-made settlement compares favorably to a hypothetical, non-existent settlement, but rather whether the Settlement is fair and reasonable on its own terms. *See Casey*, 2014 U.S. Dist. LEXIS 156553 ("The Court does not have the authority to impose a preferred payment structure upon the settling parties").

The Agreement removes the risk that the Class will recover nothing due to an unfavorable ruling on class certification, summary judgment, or any appeal therefrom. Despite removing such risk, far from accepting a significant reduction in the potential damages, the Agreement provides nearly 100% of the total damages that could have been recovered at trial. Gold Decl. at ¶¶ 59-62. Further, it is worth noting that the proposed Settlement is not a quintessential claims-made settlement, where a defendant agrees to set aside an amount of money from which costs, fees, notice, administration, etc., are pulled, and agrees to pay class members a (discounted) amount of their damages up to the cap the defendant agreed to set aside. Instead, here, there is ***no cap on liability***—Defendants agreed to make whole and pay in full any Class Member who submits a claim. Courts are in wide agreement that such a structure is eminently fair to class members. *See Cotton v. Hinton*, 559 F.2d 1326, 1334 (5th Cir. 1977) (where a class settlement will make claimants whole, objections as to fairness were "meritless"); *Krell v. Prudential Ins. Co. of Am*, 148 F.3d 283, 323 (3d Cir. 1998) (affirming district court's finding that settlement which required submission of claims and made whole such claimants was "extraordinary relief").

For all such reasons, and as will be more fully explained in the Motion for Final Approval, Plaintiffs believe the Agreement is fair and reasonable to the Class.

Finally, for the convenience of the Court, below is a proposed preliminary schedule outlining the dates set forth in the Settlement Agreement, which comports with the Schedule outlined in the proposed Order preliminarily approving of the proposed Settlement, which is affixed as Exhibit 1 to the Settlement Agreement.

## PROPOSED PRELIMINARY SCHEDULE

| # | Action | Deadline |
|---|--------|----------|
| 1 | Website Notice Posted by Settlement Administrator | Sixty (60) days after the Court enters a Preliminary Approval Order ("PAO") |

| 2 | Deadline for Settlement Administrator to mail out direct mail notice | Sixty (60) days after entry of the PAO |
|---|---|---|
| 3 | Deadline for Settlement Class Members to opt-out of the Agreement | Thirty (30) days prior to the Final Fairness Hearing |
| 4 | Deadline for submission of Notice of Intent to object to agreement | Thirty (30) days prior to the Final Fairness Hearing |
| 5 | Deadline for Settlement Class Members to file claims. | Fifteen (15) days after Final Fairness Hearing |
| 6 | Deadline for Class Counsel to file application for attorneys' fees, costs and expenses, and for a service award for Plaintiff. | Fifteen (15) days prior to the deadline to submit objections (forty-five (45) days prior to the Final Fairness Hearing) |
| 7 | Deadline for Class Counsel to file the Motion for Final Approval of the Settlement Agreement | Ten days after the expiration of the deadline to file objections (twenty (20) days prior to the Final Fairness Hearing) |
| 8 | Deadline for Settlement Administrator to file proof of completion of Notice, along with complete and accurate Opt-Out list | Ten (10) days prior to the Final Fairness Hearing |
| 9 | Final Approval Hearing | _____, 2022 at _:_ _.m. (130 days after entry of the PAO, or first available date thereafter) |

## CONCLUSION

Plaintiff respectfully requests that the Court grant preliminary approval of the proposed settlement (attached as Exhibit A), and enter an order of preliminary approval that includes the content of the proposed order attached as Exhibit E to the Agreement. The proposed preliminary approval order approves the form of Notice to be given to the Class, establishes a schedule and process for the submission of any objections or requests for exclusion from the class, and provides for a final approval hearing to be held by the Court, which the Parties ask this Court to set as part

of the Preliminary Approval Order, if entered. Plaintiff will file a motion for final approval of the

Settlement in advance of the final approval hearing.

      Dated this 18th day of July, 2022.

Respectfully submitted,

By:   */s/ Christopher Gold*
      Christopher Gold
      (admitted *pro hac vice*)
      Scott Edelsberg
      (admitted *pro hac vice*)
      **EDELSBERG LAW, P.A.**
      20900 NE 30th Ave., Ste 417
      Aventura, FL 33180
      Tel: (786) 289-9471
      chris@edelsberglaw.com
      scott@edelsberglaw.com

      ***Attorneys for Plaintiff and Proposed Class***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the Clerk of Court by using CM/ECF system this 18th day of July, 2022.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in the some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

## SERVICE LIST

Gregory R. Farkas (0069109)
**FRANTZ WARD LLP**
200 Public Square, Suite 3000
Cleveland, OH 44114
216-515-1660 – Telephone
216-515-1650 – Facsimile
gfarkas@frantzward.com

Mark L. Hanover
Mary B. Anderson
**DENTONS US LLP**
233 S. Wacker Drive, Suite 5900
Chicago, Illinois 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
mark.hanover@dentons.com
mary.anderson@dentons.com

***Attorneys for Defendant Esurance Property and Casualty Insurance Company***